# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| ROBERT SILVA-PRENTICE, | ) ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) ) ) | |
| DEAN GRAY, | ) ) | Civil Action No. 23-CV-11813-AK |
| Respondent. | ) ) ) | |

## MEMORANDUM AND ORDER ON REPORT AND RECOMMENDATION

**ANGEL KELLEY, D.J.**

Before the Court are Magistrate Judge Kelley's Report and Recommendation ("R&R") [Dkt. 27] on Petitioner Robert Silva-Prentice's Petition for a Writ of Habeas Corpus and his objection [Dkt. 28] thereto. After careful consideration and de novo review of the objection Mr. Silva-Prentice filed, Mr. Silva-Prentice's objection is overruled, the R&R is **ADOPTED** in its entirety, and his Petition for a Writ of Habeas Corpus [Dkt. 1] is **DENIED**.

### I. BACKGROUND[1]

Petitioner, Robert Silva-Prentice, was charged with one count of first-degree murder by a grand jury in Suffolk County on June 28, 2017, along with Malik Phillips. [Dkt. 17 at 1]. Following a joint jury trial, Mr. Silva-Prentice was found guilty of second-degree murder by joint venture and sentenced to life in prison with parole eligibility after fifteen years. [Id. at 2]. Mr.

---

[1] The Court assumes familiarity with the relevant procedural and factual background of this case, as it is detailed in the R&R. [Dkt. 27].

Silva-Prentice then appealed to the Massachusetts Appeals Court ("MAC"), which affirmed Mr. Silva-Prentice's conviction on February 11, 2022. [Id.]. The Massachusetts Supreme Judicial Court denied his application for further appellate review on May 12, 2022. [Id.]. Mr. Silva-Prentice filed his Petition for a Writ of Habeas Corpus before this Court on August 8, 2023. [Id.]. Mr. Silva-Prentice raised four arguments in his Petition: (1) there was insufficient evidence to affirm the conviction, (2) gang-related evidence was improperly admitted, (3) a jury instruction on involuntary manslaughter was warranted but not given, and (4) a prosecutor's misstatement of evidence impaired his rights. [Id. at 1].

In the R&R, M.J. Kelley first found "that the Commonwealth presented sufficient evidence to show, beyond a reasonable doubt, that petitioner was guilty of second-degree murder as a joint venturer. The MAC's finding was, therefore, a reasonable application of settled federal law." [Dkt. 27 at 11]. As to the introduction of gang evidence, M.J. Kelley found "petitioner fails to establish that the MAC's conclusion was 'objectively unreasonable,' and his claim fails." [Id. at 13]. As to both the failure to give an involuntary manslaughter instruction and the misstatement of the evidence during closing arguments, M.J. Kelley found: (1) the claims were procedurally defaulted because, after failing to object on those claims at trial, the MAC's decision was supported by an adequate and independent state ground, (2) there is no showing of cause and prejudice as a result of the default, and (3) there is no exception to this default as a result of a "fundamental miscarriage of justice." [Id. at 14-15]. Mr. Silva-Prentice subsequently filed an objection only as to M.J. Kelley's finding on the sufficiency of the evidence. [Dkt. 28].

## II. LEGAL STANDARD

### a. Review of the Report and Recommendation

When a magistrate judge issues a report and recommendation on a dispositive matter and

a party timely objects, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A party's written objection must be specific, concise, and supported by legal argument and citations to the record; broad, unsupported objections will not suffice and may foreclose de novo review. Crooker v. Van Higgins, 682 F. Supp. 1274, 1282 (D. Mass. 1988).

Failure to raise objections to the R&R waives the right to district court review and precludes appellate review of those claims. Davet v. Maccarone, 973 F.2d 22, 31 (1st Cir. 1992). Parties must present their full case to the magistrate, "not only their best shot but all of their shots." Stauffer v. Internal Revenue Serv., 285 F. Supp. 3d 474, 478 (D. Mass. 2017) (quoting Borden v. Sec'y of Health & Hum. Servs., 836 F.2d 4, 6 (1st Cir. 1987)); Crooker, 682 F. Supp. at 1281 ("[D]istrict court judges on a de novo review of a magistrate's report and recommendation may entirely ignore arguments not presented to the magistrate."). After conducting its review, the district court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C).

   b. **Standard of Review on Habeas Petition**

As an initial matter, "[w]hen we consider a state conviction on habeas review, we presume the state court's factual findings to be correct." Hensley v. Roden, 755 F.3d 724, 727 (1st Cir. 2014). Thus, in assessing the objection to the R&R, the facts, as taken from the opinion of the MAC and reflected in the R&R, are assumed to be correct.

Federal habeas relief is appropriate if the state court's decision is "[(1)] contrary to, or involved an unreasonable application of, clearly established Federal law . . . or [(2)] resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (quoting 28 U.S.C. § 2254(d)). Here,

Mr. Silva-Prentice seeks habeas relief under the first category. [Dkt. 27 at 5]. This standard is a "steep hurdle" to overcome. Miranda v. Kennedy, 125 F.4th 23, 28 (1st Cir. 2025). Not only is this a steep hurdle, but a federal court's "review of state court legal and factual determinations is highly deferential." Teti, 507 F.3d at 56.

A state court decision is "contrary to" clearly established federal law if it: "(1) arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) resolves a case differently from the Supreme Court on a set of "materially indistinguishable" facts. Williams v. Taylor, 529 U.S. 362, 364-65 (2000). In either scenario, the state court decision must be "substantially different," "diametrically different," "opposite in character or nature," or "mutually opposed" to Supreme Court precedent. Id. at 405. A state court decision involves an "unreasonable application" of federal law if the state court identified the correct governing legal principle from the Supreme Court's decisions but applied it in an objectively unreasonable manner. Id. at 409. The Supreme Court has warned that "an unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410. An unreasonable application of federal law "must be 'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). Instead, an application is unreasonable "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." Id. at 427 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

### III.  DISCUSSION

As an initial matter, Mr. Silva-Prentice solely objects to the R&R's finding as to the sufficiency of the evidence. He does not object to the R&R's other findings, thus waiving

District Court review. As a result, the Court begins by adopting in full those portions of the R&R to which Mr. Silva-Prentice does not object.

Turning to the objection, Mr. Silva-Prentice argues that it was not objectively reasonable for the MAC to conclude that the Commonwealth presented constitutionally sufficient evidence to support his conviction for second-degree murder by joint venture and therefore it was an unreasonable application of federal law. [Dkt. 28 at 1]. Specifically, Mr. Silva-Prentice claims that the MAC unreasonably applied the legal principle from Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the Supreme Court held that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Id. at 316. "This rule is general in nature and directs an inquiring court to ask a simple question: 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Webster v. Gray, 39 F.4th 27, 34 (1st Cir. 2022) (quoting Jackson, 442 U.S. at 319) (emphasis in original).

Relevant here, the elements of second-degree murder in Massachusetts are: (1) an unlawful killing (2) committed with malice. Commonwealth v. Earle, 458 Mass. 341, 346 (2010). Malice can be inferred if an inherently dangerous weapon, including a firearm, is used in the offense. Commonwealth v. Tu Trinh, 458 Mass. 776, 784 (2011). Joint venture liability requires the Commonwealth to prove "that the defendant was not only present at the commission of the crime, but that he aided, commanded, counselled, or encouraged the commission of the offense while sharing the mental state required for its commission." Commonwealth v. Cintron, 435 Mass. 509, 515 (2001) (citing Commonwealth v. Soares, 377 Mass. 461, 470 (1979));

Commonwealth v. Zanetti, 454 Mass. 449, 468 (2009) (holding that, to prove joint venture liability, the Commonwealth must prove "that the defendant knowingly participated in the commission of the crime charged, alone or with others, with the intent required for that offense"). Knowledge or intent may be proven by inference "from all the facts and circumstances developed at trial." Commonwealth v. Costa, 407 Mass. 216, 225 (1990). A joint venturer "encourages, assists, or emboldens 'by giving . . . hopes of immediate assistance,' . . . if he is by agreement in a position to render aid and '[t]he jury may infer the requisite mental state from the defendant's knowledge of the circumstances and subsequent participation in the offense.'" Cintron, 435 Mass. at 515 (alteration in original) (quoting Soares, 377 Mass. at 470).

In support of this objection, Mr. Silva-Prentice raises three arguments: (1) the evidence of gang affiliation did not permit a reasonable inference of aiding the joint venture, (2) the circumstantial evidence was insufficient to permit the necessary reasonable inferences, and (3) the facts as a whole did not amount to constitutionally sufficient evidence because of "weak links in the chain of logic." [Dkt. 28 at 2, 4-5]. The Court will address each in turn.

    a. **Evidence of Gang Affiliation**

In support of his objection to the R&R, Mr. Silva-Prentice first argues that the evidence of gang affiliation, without more, "did not permit a reasonable inference that the petitioner aided the joint venture to commit a shooting." [Dkt. 28 at 2]. Although the Commonwealth's theory was that this shooting was retribution for the shooting of Khisean Desvarieux, an alleged gang member allied with the Orchard Park gang, Mr. Silva-Prentice points to the lack of evidence in the record that he ever expressed hostility toward the Ruggles gang, which was allegedly responsible for Desvarieux's death. [Id. at 2-3; Dkt. 17 at 8]. Mr. Silva-Prentice also argues the

6

lack of evidence that he was friendly with Desvarieux indicates a lack of intent for revenge. [Dkt. 28 at 3].

Here, despite Mr. Silva-Prentice's suggestion to the contrary, evidence of gang affiliation is not all that was relied upon in determining Mr. Silva-Prentice's participation in the joint venture. As the Magistrate Judge laid out, there was evidence in the record that Mr. Silva-Prentice was with Phillips, the shooter, about thirty minutes before the shooting. Thus, not only were they associated with one another through their gang affiliation, but also because they were together just before the shooting. [Dkt. 19 at 13]. Taken together, a jury could make a reasonable inference that Mr. Silva-Prentice knew a member of his cohort was armed, even if not with Phillips when another witness saw Phillips with the gun. The jury could also reasonably infer that Mr. Silva-Prentice was one of the lookouts. Pursuant to the record, two men from the original group of five broke off to go across the street to the church and one of them was in a red hooded sweatshirt. [Id. at 5]. Seconds after the rest of the group entered 180 Ruggles Street, the building where the shooting took place, the man in the red hooded sweatshirt and another person followed the group in. [Id.]. Based on the video footage, the jury could reasonably infer that the other person at the church was Mr. Silva-Prentice, given the two walked to the church, and then to 180 Ruggles, where Mr. Silva-Prentice entered with the man in the red hooded sweatshirt. Thus, the jury could reasonably infer that Mr. Silva-Prentice was acting as a lookout, given that he broke off from the group, some of whom were armed, to go across the street, and then came right back to enter the building where the shooting occurred, immediately after the armed cohort member entered the building. Finally, although Mr. Silva-Prentice's alternative explanation is reasonable, the jury could have also reasonably relied on evidence of flight to support its determination that Mr. Silva-Prentice aided in the shooting. Commonwealth v. Williams, 422

Mass. 111, 121 (1996) ("Joint venture may be proved by circumstantial evidence, including evidence of flight together."). Mr. Silva-Prentice moved towards the shooting after the first, unintentional shot was fired and fled only when he saw the others in his group running towards him. [Dkt. 17 at 7]. Thus, a rational trier of fact could have found that this was evidence of flight that supported a finding of joint venture.

Mr. Silva-Prentice makes no mention of the requisite Jackson standard, which is highly deferential, to sustain a sufficiency of the evidence argument. Mr. Silva-Prentice's argument must be put in the context of this standard, that *any* rational trier of fact could have found that along with the gang evidence, additional evidence supported a finding that Mr. Silva-Prentice aided the joint venture. Gang affiliation was just one piece of circumstantial evidence, appropriately used to address the question of motive—why was Mr. Silva-Prentice there with others on that day? In conjunction with evidence that supports a rational trier of fact to find that Mr. Silva-Prentice acted as a lookout, could have known that Phillips was armed, fled with the man that committed the shooting, and that in the commission of the shooting could have reasonably aided the shooting, a jury could find that Mr. Silva Prentice aided the joint venture.

    b. **Circumstantial Evidence**

Mr. Silva-Prentice next argues that the circumstantial evidence in this case is weak and does not permit a reasonable inference of aiding the joint venture. In support of that argument, Mr. Silva-Prentice cites an out-of-circuit case to support the proposition that gang affiliation does not create a sufficient inference of motive. See Juan H. v. Allen, 408 F.2d 1262, 1278 (9th Cir. 2005). Here, Mr. Silva-Prentice was not merely at the scene of the shooting. To recount again, Mr. Silva-Prentice was a member of the Orchard Park gang, and along with others, entered Ruggles territory after the recent shooting death of someone friendly to the gang. [Dkt. 19 at 4-

8

5]. While it is true that there is no direct evidence that Mr. Silva-Prentice ever saw Phillips with the gun, that Mr. Silva-Prentice and Phillips were both affiliated and had been together just 30 minutes before the shooting would allow a reasonable jury to infer that Mr. Silva-Prentice knew about the gun. Mr. Silva Prentice, in crossing the street to the church, waiting there until Phillips entered 180 Ruggles, and then following Phillips soon after he entered the building, could allow a jury to reasonably conclude that Mr. Silva-Prentice was acting as a lookout. Finally, that Mr. Silva-Prentice did not flee after the initial accidental discharge and then waited until seeing Phillips and the others in the group running to flee after the shooting, could allow an inference that Mr. Silva-Prentice was ready and able to provide immediate assistance. [Id. at 9-10].

While Mr. Silva-Prentice is correct in suggesting that not all circumstantial evidence is equal, this Court agrees with the Magistrate Judge that circumstantial evidence will always require a certain level of conjecture. With that said, "conjecture consistent with the evidence becomes less and less a conjecture, and moves gradually toward proof, as alternative innocent explanations are discarded or made less likely.'" Magraw v. Roden, 743 F.3d 1, 7 (1st Cir. 2014) (quoting Stewart v. Coalter, 48 F.3d 610, 615-16 (1st Cir. 1995)).

Based on the totality of the evidence, while circumstantial, the conjecture is consistent with the evidence proved by the Commonwealth. The jury chose a reasonable interpretation of the evidence, and in the light most favorable to the prosecution, a rational trier of fact could have found that petitioner acted as a joint venturer.

    **c. Weak Links in the Chain of Logic**

Mr. Silva-Prentice's final argument is that the facts as a whole "did not amount to constitutionally sufficient evidence because of weak links in the chain of logic." [Dkt. 28 at 5]. Mr. Silva-Prentice argues that in the absence of certain evidence, the Magistrate Judge relied on

9

Mr. Silva-Prentice's gang affiliation to complete this causal chain. [Id.]. Mr. Silva-Prentice fails to mention that the evidence must be viewed in the light most favorable to the prosecution, allowing *any* rational trier of fact to find the requisite elements.

While it is true that Mr. Silva-Prentice identifies in his objection direct evidence that was not presented, and an alternative reasonable interpretation, that is not the standard by which a federal habeas petition is reviewed. Because the habeas petitioner presents a challenge of the sufficiency of the evidence, the facts are taken most compatible with the jury's verdict, consistent with record support. Leftwich v. Maloney, 532 F.3d 20, 21 (1st Cir. 2008) (citing Jackson, 443 U.S. at 319). Further, as stated by the Magistrate Judge, this Court does not consider whether the evidence is susceptible to a "plausible alternate interpretation," but whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Morgan v. Dickhaut, 677 F.3d 39, 53 (1st Cir. 2012) (quoting Jackson, 433 U.S. at 319). As described several times above, a rational factfinder could have found that Mr. Silva-Prentice was aiding and abetting the shooting and acting as a joint venturer based on the evidence before them.

Mr. Silva-Prentice has not established that the MAC erred in applying the Jackson standard here in concluding that the Commonwealth presented constitutionally sufficient evidence to support his conviction for second-degree murder by joint venture.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Silva-Prentice's objection [Dkt. 28] is overruled, the R&R [Dkt. 27] is **ADOPTED**, and the Petition for a Writ of Habeas Corpus [Dkt. 1] is **DENIED**.

**SO ORDERED.**

Dated: November 26, 2025                               /s/ Angel Kelley
                                                       Hon. Angel Kelley
                                                       United States District Judge